[No. 6448.  Decided January 9, 1907.]

SVANDIS JOHNSON *et al.*, *Respondents*, v. GRIFFITHS-SPRAGUE STEVEDORING COMPANY, *Appellant.*[1]

MASTER AND SERVANT — IMPROPER APPLIANCES — NEGLIGENCE OF MASTER—EVIDENCE—QUESTION FOR JURY.  There is sufficient evidence to make a case for the jury as to the negligence and knowledge of a master using an unsafe appliance in lowering steel plates into the hold of a vessel, where a number of witnesses testified that the clamp used for the purpose dropped plates repeatedly and finally had to be abandoned for that reason, and it appears that it was not in common use or an ordinary recognized appliance for that purpose.

SAME.  The master cannot experiment with, but assumes the risk of the safety of, appliances not in common use.

[1]Reported in 88 Pac. 193.

Appeal from a judgment of the superior court for King county, Tallman, J., entered May 19, 1906, upon the verdict of a jury rendered in favor of the plaintiff, in an action for the wrongful death of a longshoreman who was assisting in loading steel plates on board a vessel.   Affirmed.

*Richard S. Eskridge* (*Philip Tindall,* of counsel), for appellant.

*Graves, Palmer & Murphy* and *J. P. Wall,* for respondents.

Fullerton, J.—This action was brought by the respondent on behalf of herself and her minor children to recover damages for the death of her husband, Arni Johnson, whose death she alleges was caused by the negligence of the appellant.   Johnson was a longshoreman, and at the time of his death was in the employ of the appellant.   On the day the accident happened which caused his death, Johnson was assisting in loading steel plates on board a vessel, his duties being to assist in stowing away the plates after they were lowered into the hold.   The carriers used to hold the plates while they were being carried from the wharf into the vessel were of two sorts.   The first was a chain sling used for carrying such plates as were short enough to pass through the vessel's hatchway while in a horizontal position, or of sufficient rigidity not to double or bend when carried in a perpendicular position.   The second was a U-shaped clamp with a set screw in one of its flanges.   It was fastened to a plate by placing the end of the plate between the flanges and tightening the set screw with a wrench, the flanges being of sufficient strength so as not to yield to the pressure.   The clamp was a comparatively safe device for single plates, as the power applied would force the convex-shaped end of the set screw into the plate a sufficient distance to prevent its slipping.   With two plates it was not so secure, as the second one would have nothing to hold it except friction heightened by the pressure of the set screw.

At the time Johnson met with the accident which resulted in his death, plates 18 feet in length, 3 feet in width, and three-eighths inches thick, each weighing 800 pounds, were being loaded onto the vessel, the clamp being used as the carrier. At first the plates were carried singly, but later two at a time. After one of such loads had been lowered into the hold of the vessel, it was found that the wrench used to loosen the set screw had been misplaced, and search was made for it immediately. Johnson with others was searching directly underneath the hatchway, when a second load was swung over it, somewhat unexpectedly, as one of the witnesses states. Before these could be steadied sufficiently to permit lowering them, the clamp gave way, letting the plates fall onto the coamings of the hatchway, and from there into the hold of the vessel. The men started to get from under the hatchway when they heard the plates strike the coamings, but Johnson did not succeed in reaching a place of safety, and was struck by the falling plates, receiving injuries from which he afterwards died.

The respondent in her complaint alleged that the appellant was negligent in not providing its employees with a reasonably safe place within which to work, and reasonably safe appliances to work with. The appellant denied the allegations of the complaint, and pleaded affirmatively assumption of risk and contributory negligence on the part of Johnson. On the trial the verdict and judgment went for the respondent, and this appeal is taken therefrom.

The appellant first assigns that the court erred in holding that the evidence was sufficient to show negligence on its part in permitting the use of the appliance that caused the injury. That the appliance was unsafe and unsuitable for the purpose for which it was used at the time of the accident, is abundantly shown by the evidence. A number of the witnesses testified that it dropped plates repeatedly when more than one were being carried, and that they finally had to abandon its use for that reason. This was sufficient evidence to go to the

jury on the question of the clamp being a proper appliance for the purposes for which it was being used, and sufficient to support their verdict to the effect that it was not a proper appliance. On the question of the appellant's knowledge that it was not so, the evidence is not so direct. But it was shown that the appliance was not one in common use, or one with which the workmen were acquainted. In fact an officer of the appellant testifies that he had seen it used in but one other place, and that it was there he got the plan from which he had this one constructed. This being true, it must be assumed that appellant assumed the risk of the safety of the appliance. In matters of this kind an employer is not permitted to experiment at the risk of his employees. He must use the ordinary, recognized appliances, or know that those he does employ are reasonably safe for the purposes for which they are intended. It was not error, therefore, for the court to submit to the jury the question whether this appliance was reasonably safe for the purposes for which it was being used, and whether or not the appellant knew, or should have known, that it was unsafe.

The claim of contributory negligence is based on the contention that the deceased heard and failed to heed a warning given him by the person acting as foreman of the body of men with whom he was working, and also that he knew the appliance was unsafe. But on both of these questions we find a substantial dispute in the evidence. The questions were, therefore, properly submitted to the jury, and this court is bound by their verdict.

The judgment is affirmed.

ROOT, CROW, DUNBAR, and HADLEY, JJ., concur.

MOUNT, C. J. and RUDKIN, J., took no part.